# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LAMALSIKOU LOWE,

    *Petitioner*,

vs.

JAMES M. SCHOMIG, *et al.*,

    *Respondents*.

2:04-cv-01034-JCM-RJJ

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the court for decision on the merits on the two remaining claims.

## *Background*

Petitioner Lamalsikou Lowe seeks to set aside his 2000 Nevada state court conviction, pursuant to a jury verdict, for robbery.[1]

In Ground 1, Lowe challenges the sufficiency of the evidence to support the robbery conviction. He contends that the evidence was insufficient to establish that he used force to take the property in question, and he further contends that the evidence was insufficient to establish an intent to permanently deprive the victim of the property.

---

[1] Petitioner also was convicted in the original judgment of conviction of sexual assault and two counts of battery. The Nevada Supreme Court reversed and remanded for a new trial on the sexual assault charge, and petitioner ultimately entered a guilty plea to possession of stolen property that resolved that charge. The claims in the federal petition further do not concern the conviction on the misdemeanor battery charges. The conviction on the robbery charge is the only matter at issue in this federal habeas proceeding.

In Ground 2(a), Lowe alleges that he was denied effective assistance of counsel when his trial counsel failed to request a lesser included offense instruction based upon the offense of unlawful taking of a vehicle.

The evidence at trial included the following, with the victim, Laurene Mackey, testifying as follows regarding the December 28, 1999, incident.[2]

Mackey met Lowe in May or June 1999 through a mutual friend. They were casual friends.[3]

On December 26, 1999, Mackey went over to Lowe's uncle's apartment to help him get ready to move. On December 27, 1999, Mackey loaned her Ford Bronco, which was under her mother's name, to Lowe for him to use in the uncle's move. He brought the vehicle back to her at 6:00 p.m., at the end of her work day. She dropped him off at a friend's house.[4]

Later that evening, Mackey loaned the Bronco to another friend, Ricky Little, who was supposed to return the vehicle at 10:00 p.m. Little did not return the Bronco at that time, however. After midnight, Mackey received a call from Lowe telling her that he was outside her home with her vehicle. Lowe said that Little had asked him to bring the vehicle to her. Mackey accompanied Lowe in the Bronco to his apartment, apparently to drop him off.[5]

When they arrived, however, Lowe took the keys and started walking up the stairs. Mackey followed, telling him that she wanted to go home and asking for her keys. Lowe would not give her the keys, and Mackey kept asking for her keys in an increasingly loud voice. He told her to shut up, and when she did not stop, he slapped her. He then forced her to have sex with him, pulling at her clothes and throwing her on the bed despite her saying that she did not want to have sex. #27, Ex. 31, at 24-27, 66, 79-80 & 83-84.

---

[2] The court makes no credibility findings or other factual findings regarding the truth or falsity of the state court evidence. It summarizes the evidence solely as background to the issues presented in this case. No statement of fact made in describing testimony or other evidence constitutes a finding of fact by the court.

[3] #27, Ex. 31, at 20-22. The court is using the alternate numbering at the very bottom of each page.

[4] *Id.*, at 22-23 & 59-61.

[5] *Id.*, at 23-24, 61-66, 74-75 & 79.

1     Lowe forced Mackey to have vaginal and anal sex, and he then took a shower. As he
2 went to the shower, Lowe told Mackey that he would hurt her if she ran for the door or picked
3 up the phone. After the shower, he forced her to perform oral sex on him, despite her telling
4 him that she did not want to do that.[6]

5     Lowe fell asleep a short time later. Mackey looked for her keys but could not find them.
6 She tried to wakeup Lowe to get her keys to go home, but he would not give them to her.
7 She ran out of the apartment with her cell phone down to her vehicle. She paged a friend with
8 no reply. She then called a coworker, Christina Smith, who rode with her to and from work
9 each day.[7]

10     Lowe woke, came downstairs and eventually drove Mackey to her house. Lowe took
11 Mackey's cell phone from her, and he would not let her make any more calls on the drive. At
12 her home, Mackey quickly got ready for work, and she called Smith and told her what had
13 happened. She kept her main priority on work at that point, as she was the sole provider for
14 her children. She went back down to the vehicle. Lowe drove the vehicle to pick up Smith
15 and drove the two of them to work.[8]

16     At work, Mackey told Smith, Maryann Oliva-Del Rio, and others what had happened.
17 They suggested that she call the police, but she did not do so "[b]ecause he was threatening
18 my life." She was scared, in shock, and she didn't think that the police would believe her
19 because she had been able to prevail upon Lowe to use a condom during the sexual assault.
20 Lowe called repeatedly during the day, threatening her if she did not return his calls. Lowe
21 asked for one hundred dollars, which she gave to him "[b]ecause I was scared [because] . .
22 . [h]e had been threatening me."[9]

23     ////

---

[6] #27, Ex. 31, at 27-29, 67-68 & 80.

[7] *Id.*, at 29-31, 68-70 & 80.

[8] *Id.*, at 31-32, 70-71 & 80-82.

[9] *Id.*, at 32-34, 71-72, 76-79 & 84. See also *id.*, at 85-91 (testimony by Maryann Oliva-Del Rio).

1   At the end of the work day, Lowe picked up Mackey and Smith in the Bronco, with his
2   uncle also in the vehicle. Del Rio followed behind in her vehicle "to make sure everything was
3   okay." Mackey testified that she got back in the Bronco with Lowe because she was still
4   trying to get her mother's vehicle back. During the drive, Mackey told Lowe that she was
5   going bowling with Del Rio and Smith and that she wanted her keys. He said no. Also during
6   the drive, he snatched her cell phone out of her hand while she was using it. She asked for
7   it back, but he did not give it back to her.[10]

8   Lowe drove to Little's house. He got out of the vehicle with the keys and walked over
9   to where Little was standing to talk to him. Lowe then walked back over to the Bronco, and
10  he told Smith to get out of the vehicle, threatening that he would pull her out if she did not get
11  out. Lowe then pulled an unwilling Mackey out of the Bronco. Lowe got into the vehicle and
12  started backing out, with Mackey coming up to the window.[11]

13  Lowe stopped the vehicle and got out to talk to Little a second time. Mackey described
14  what happened next:

> I got fed up and walked towards him demanding my phone
> and keys, and he walked towards me. The next thing I know I
> have blood on my face, and I was on the ground and he kicked
> me in my face.

18  #27, Ex. 31, at 38. Mackey ran to Little's house, and she assumed that Lowe drove off.[12]

19  Christina Smith testified as follows. Smith in the main corroborated Mackey's
20  testimony, subject to hearsay admissibility rules, regarding the calls that she received from
21  Mackey, her demeanor and discussion of the incident at work during the day, and the rides
22  with Lowe to and from work on December 28, 1999. When they arrived at Little's house after
23  work, Smith saw Lowe hit Mackey. Lowe struck Mackey after he had talked with Little and
24  after she asked him for her phone back. Lowe struck Mackey in the face multiple times.

---

[10] #27, Ex. 31, at 34-37, 72-73 & 82.

[11] *Id.,* at 37.

[12] *Id.*, at 37 & 73-74.

-4-

1   While he was hitting Mackey, Lowe said to Smith: "Bitch, if you call the police, I know where
2   you and your baby live." Smith ran and called the police.[13]

3   Shortly after midnight on December 29, 2000, Mackey was transported to University
4   Medical Center. She showed visible signs of having been beaten. She told the nurses that
5   a friend, Lowe, had raped her vaginally, anally and orally in his apartment during the early
6   morning hours of December 28, 1999, and that he had beaten her later the same day.
7   Physical examination revealed injuries to her rectal area that the sexual assault nurse testified
8   occurred most probably within 48 hours but no more than 72 hours prior to the exam.[14]

9   Mackey further testified that, in the early morning hours of December 29, 1999, after
10  she got home from the hospital, she received a call from Lowe on her home phone. He
11  threatened her, Smith, and Del Rio. He followed with a number of threatening calls. Lowe
12  stated that he was going to hurt Mackey and that "if his son had to grow up without a father,
13  my kids would grow up without a mother." At some point, Lowe called and said that he
14  wanted to return the Bronco, but Mackey told him to lay low because the police were looking
15  for him. Mackey told Lowe that the police were looking for him because she did not want to
16  meet him alone to get the truck back and she wanted Lowe to be scared to come near her.[15]

17  On December 29 or December 30, 1999, the investigating detective, Detective Robert
18  Conboy, saw Lowe driving the Bronco. When Lowe and the detective made eye contact,
19  Lowe sped up and fled the scene. The police did not apprehend Lowe until January 5, 2000.
20  Lowe admitted to Detective Conboy that he had hit Mackey, but he denied having had any
21  type of sexual intercourse with her. #27, Ex. 31, at 143-46, 152-53 & 157-58.

---

[13] #27, Ex. 31, at 92-111. Smith testified that Lowe hit Mackey after Lowe talked to Little and after Mackey asked for her phone. It appeared to Smith that Lowe hit Mackey because of the conversation that he had just had with Little. She did not know, however, why Lowe hit Mackey. *Id.,* at 96-97 & 105-07.

[14] See #28, Ex. 55, at 3. The court was not able to locate the corresponding trial transcripts in the state court record materials provided. Neither party has suggested that the Nevada Supreme Court's summary of the evidence described above in the text was materially inaccurate. See also #27, Ex. 31, at 140-41, 147 & 159-60 (Detective Robert Conboy).

[15] #27, Ex. 31, at 45-47, 75-76 & 82-83; *see also id.*, at 161 & 163-64 (Detective Conboy).

Subsequent to the time that the police retrieved the Bronco and Mackey's cell phone, Lowe called her on the cell phone and told her that if she, her mother, or her children stepped outside of her home that "he was going to shoot us."[16]

### *Governing Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n.7, 138 L.Ed.2d 481 (1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 17, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

---

[16] #27, Ex. 31, at 47.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18,124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

## *Discussion*

### *Ground 1: Sufficiency of the Evidence as to Robbery*

In Ground 1, Lowe challenges the sufficiency of the evidence to support the robbery conviction. He contends that the evidence was insufficient to establish that he used force to take the property in question, and he further contends that the evidence was insufficient to establish an intent to permanently deprive the victim of the property.

On a sufficiency of the evidence challenge, the habeas petitioner faces a "considerable hurdle." *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003). Under the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the jury's verdict must stand if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *E.g., Davis*, 333 F.3d at 992. Accordingly, the reviewing court, when faced with a record of historical facts that supports conflicting inferences, must presume that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution, even if the state court trier of fact's resolution of specific conflicts does not affirmatively appear in the record. *Id.* The *Jackson* standard is applied with reference to the substantive elements of the criminal offense as defined by state law. *E.g., Davis*, 333 F.3d at 992. When the deferential standards of the AEDPA and *Jackson* are applied together, the controlling question for decision on federal habeas review thus becomes one of whether the Nevada Supreme Court's decision reflected an unreasonable application of the *Jackson* standard to the evidence presented at trial. *See, e.g., Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005).

In the present case, the Supreme Court of Nevada held as follows:

> Lowe first contends that insufficient evidence was adduced at trial to support his [conviction] for robbery . . . .
>
> Lowe argues that insufficient evidence was adduced to demonstrate that he took Mackey's truck and cell phone with force or with threat of force. Lowe asserts that Mackey voluntarily loaned him her truck, which he timely returned. Lowe contends that, although he retained possession of the truck following the alleged sexual assaults, Mackey never called the police to report her vehicle as stolen. Further Lowe asserts that he hit Mackey on the day after the alleged sexual assaults, not to retain her cell phone, but because another person had said something to him which enraged him. . . . .
>
> The standard of review for sufficiency of the evidence on appeal is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have been convinced of the defendant's guilt beyond a reasonable doubt. A jury's verdict will not be disturbed where substantial evidence exists to support it. Further, "it is exclusively within the province of the trier of fact to weigh evidence and pass on the credibility of witnesses and their testimony." Finally, circumstantial evidence alone may sustain a conviction.
>
> In this case, our review of the record reveals sufficient evidence from which the jury, acting reasonably and rationally, could have found the elements of robbery . . . beyond a reasonable doubt. Compelling evidence and testimony exist which suggest that Lowe took Mackey's cell phone the day after the alleged assaults in order to prevent her from calling anyone for assistance and that he would not return the phone to her when she asked for it back. Additionally, sufficient evidence was adduced at trial which demonstrated that Lowe beat Mackey and subsequently fled the scene in her vehicle.

#28, Ex. 43, at 4-5 (citation footnotes omitted).

On federal habeas review, petitioner urges that "there is absolutely no evidence" that he used force to take property from Mackey. He contends that there is an "utter lack of evidence that [he] used force, violence, or threat of such to obtain the Ford Bronco or the cell phone" from Mackey, because: (a) all of Mackey's actions from the time that he came to her house with the truck in the early morning hours of December 28, 1999, through the visit to Little's house that evening allegedly were inconsistent with Mackey believing that Lowe had stolen the truck; (b) Mackey never called the police during the day to report the vehicle stolen; (c) both Mackey and Smith allegedly testified that it appeared that Lowe hit Mackey because

of what Little said to him rather than to retain possession of the truck; and (d) even after he tried to return the truck, she told him to lay low because the police were looking for him.[17]

Petitioner further contends that the robbery conviction should be set aside because of a lack of evidence that he intended to permanently deprive Mackey of the property.[18]

The legal premises and the factual premises underlying the petitioner's challenge to the sufficiency of the evidence all are fallacious.

First, long-established Nevada law directly contradicts Lowe's underlying legal premise that he could not be guilty of robbery if, *arguendo*, he struck Mackey because of what Little said rather than to obtain or retain possession of the truck and/or the cell phone. The Supreme Court of Nevada instead has held, repeatedly, directly to the contrary:

> . . . . Pursuant to Nevada's robbery statute, NRS 200.380, "it is irrelevant when the intent to steal the property is formed," and it is not necessary that force or violence involved in the robbery "be committed with the specific intent to commit robbery." *Chappell [v. State]*, 114 Nev. [1403,] 1408, 972 P.2d [838,] 841 [(1998)]. Rather, a robbery may be shown where a defendant simply takes "'advantage of the terrifying situation [he or she] created'" and flees with the victim's property. *Id.* (*quoting Norman v. Sheriff*, 92 Nev. 695, 697, 558 P.2d 541, 542-43 (1976)).
>
> . . . . .
>
> FN17. We note, however, that the jury received one instruction providing that "[a] robbery occurs when the use of force follows the actual taking of property, so long as the use of force is accompanied by the intent to take another's property." *This instruction suggests that the intent to steal must be formed at the time that force is used, which is unnecessary under Nevada law. . . . . [W]e note that the jury received another instruction that more accurately stated Nevada law:* "[A]lthough acts of violence and intimidation preceded the actual taking of the property and may have been primarily intended for another purpose, it is enough to support the charge of robbery when a person takes the property by taking advantage of the terrifying situation he created."

*Leonard v. State*, 117 Nev. 53, 76-77 & n.17, 17 P.3d 397, 412 & n.17 (2001)(emphasis

---

[17] #30, at 9 & 11.

[18] *Id.*, at 11, lines 27-28.

added). The Supreme Court of Nevada accordingly has repeatedly rejected arguments by Nevada defendants seeking to establish that they could not be convicted of robbery unless there was evidence that they formed the intent to steal the victim's property prior to their use of force.[19]

Lowe's core legal premise on this claim – that he could not be guilty of robbery because, allegedly, he struck Mackey because of what Little said rather than to retain her property – thus has been repeatedly, emphatically, and conclusively rejected by directly apposite and controlling Nevada state authority. The *Jackson* standard is applied with reference to the substantive elements of the criminal offense as defined by state law, *e.g., Davis*, 333 F.3d at 992, and the Nevada Supreme Court's repeated rejection of this argument as to the required elements for robbery is binding on this court.

Second, long-established Nevada law also directly contradicts Lowe's remaining legal premise that the robbery conviction must be set aside for lack of evidence that he intended to permanently deprive Mackey of the property. Nevada law does not require proof that the defendant intended to permanently deprive the victim of the property to sustain a robbery conviction. *See,e.g., Hickson v. State*, 98 Nev. 78, 640 P.2d 921 (1982); *Litteral v. State*, 97 Nev. 503, 505-08, 634 P.2d 1226, 1227-29 (1981), *overruled in part on other grounds Talancon v. State*, 102 Nev. 294, 721 P.2d 764 (1986).[20]

Third, even if, *arguendo*, the factual point otherwise were a material one under Nevada law, the trial record did not support Lowe's underlying factual premise that the only possible inference to be drawn from the evidence was that he struck Mackey because of what Little

---

[19] *See,e.g., Leonard*, 117 Nev. at 76-77, 17 P.3d at 412 (rejecting argument that the State was required to prove that the murder victim was alive before the robbery or that the defendant intent preceded the use of force); *Chappell*, 114 Nev. at 1407-08, 972 P.2d at 841(rejecting argument that defendant could not be guilty of robbery because he took the victim's car and social security card as an afterthought); *Norman v. Sheriff, Clark County*, 92 Nev. 695, 558 P.2d 541 (1976)(rejecting argument that defendant could not be convicted of robbery because the defendants attacked the victim to try and force him to reveal the whereabouts of his roommate and they stole a television and Christmas gifts only as they fled the scene).

[20] It is subject to question whether Lowe exhausted a legal theory that the evidence was insufficient for lack of evidence of an intent to permanently deprive the victim of the property. The argument in all events is without merit, whether on deferential or *de novo* review. *Cf.* 28 U.S.C. § 2254(b)(2).

said rather than to retain her property. Contrary to the assertion in the petitioner's memorandum,[21] Mackey did not testify that it appeared to her that Lowe struck her as a result of what Little said. Rather, Mackey testified that, after Lowe talked with Little a second time, she got fed up and was walking toward Lowe demanding her phone and keys and then the next thing that she knew she was on the ground with blood on her face being kicked in the face by Lowe. She stated no opinion during her testimony that Lowe struck her because of something that Little said rather than in response to her – despite his prior violent acts and repeated threats of force if she did not comply with his wishes – walking toward him angrily demanding her cell phone and keys.[22] While Christina Smith testified that it appeared to her that Lowe hit Mackey because of the conversation that he had just had with Little, she further testified that she in fact did not know why Lowe hit Mackey. Similar to Mackey, Smith testified that Lowe hit Mackey after Lowe had talked to Little but also after Mackey asked for her phone back.[23] The evidence at trial therefore did not conclusively establish that Lowe struck Mackey because of what Little said to him but instead also supported a competing inference that Lowe struck Mackey because she finally was standing up to him -- despite his prior violence, intimidation and threats -- and was demanding her phone and keys back.

It is established law that, in reviewing the sufficiency of the evidence under *Jackson*, the reviewing court, when faced with a record of historical facts that supports conflicting inferences, must presume that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution, even if the state court trier of fact's resolution of specific conflicts does not affirmatively appear in the record. In this case, the trial evidence supported conflicting inferences as to the reason or reasons why Lowe struck Mackey. This court must presume that the jury resolved the conflicting inferences in favor of the prosecution, to the extent that the point is material under Nevada law in the first instance.

---

[21] #30, at 11, lines 20-22.

[22] #27, Ex. 31, at 38, 74 & 76.

[23] *Id.*, at 96-97 & 105-07.

-11-

Finally, Lowe urges that there was an "utter lack of evidence that [he] used force, violence, or threat of such to obtain the Ford Bronco or the cell phone," because all of Mackey's actions over the prior day and night allegedly were inconsistent with a belief that Lowe had stolen the truck, because she never called the police while at work, and because, even after he called to return the truck, she told him to lay low because the police were looking for him. This argument ignores Mackey's testimony that, from the early morning hours of December 28, 1999, forward, she repeatedly asked for the return of her property, that Lowe refused to comply, and that Lowe instead repeatedly threatened her with physical harm if she did not comply with his wishes. The argument further ignores Mackey's testimony that Lowe's terrorizing of her began with a forcible sexual assault during which she was raped by Lowe vaginally, anally and orally. Indeed, the allegedly exculpatory actions, inactions, and statements by Mackey to which Lowe refers all are explained by one word in Mackey's testimony – fear. Fear for her life and then for that of her family, as Lowe expanded his threats to include her mother and her children.

Again, it is axiomatic that, under *Jackson*, the reviewing court must presume that the trier of fact resolved any competing inferences in favor of the prosecution and must defer to that resolution. Petitioner's argument ignores both this well-established law and the extensive evidence of force, violence, and threats of further violence in the record.

The Nevada Supreme Court's rejection of Lowe's challenge to the sufficiency of the evidence on the robbery conviction was neither contrary to nor an unreasonable application of *Jackson*. The petitioner's factual and legal arguments to the contrary are directly refuted both by the trial record and established controlling law.

Ground 1 does not provide a basis for federal habeas relief.

***Ground 2(a): Effective Assistance of Counsel***

In Ground 2(a), Lowe alleges that he was denied effective assistance of counsel when his trial counsel failed to request a lesser included offense instruction based upon the offense of unlawful taking of a vehicle.

/ / / /

On a claim for ineffective assistance of counsel, the petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance resulted in actual prejudice. On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from counsel's perspective at the time. In this regard, the reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

Lowe contends that his trial counsel should have requested a lesser offense instruction based upon N.R.S. 205.2715. This statute provides in pertinent part that "[e]very person who takes and carries away or drives away the vehicle of another without the intent to permanently deprive the owner thereof but without the consent of the owner of such vehicle is guilty of a gross misdemeanor."

The Supreme Court of Nevada rejected this ineffective assistance claim on the following grounds:

> . . . Lowe contended that his trial counsel was ineffective for failing to request a jury instruction on the crime of unlawful taking of a vehicle as a lesser included offense of robbery. This court has determined that an offense is a lesser included offense only if "the elements of the lesser offense are an entirely included subset of the elements of the charged offense." In the instant case, Lowe was charged with robbery, which is the taking of personal property from another "against his will, by means of force or violence or fear of injury." A person is guilty of the crime of unlawful taking of a vehicle if he drives away the vehicle of another without the consent of the owner. The elements of unlawful taking of a vehicle are not an entirely included subset of the elements of robbery because the former requires the taking of a vehicle, whereas the latter does not. Therefore, a jury instruction concerning the unlawful taking of a vehicle would have been inappropriate. [FN9] Further, on direct appeal this court concluded that there was overwhelming evidence to support Lowe's robbery conviction. For these reasons, Lowe did not

> establish that his trial counsel acted unreasonably in failing to request such a jury instruction, and the district court did not err in denying this claim.
>
> [FN9] We further note that the State specifically charged Lowe with the robbery of both a vehicle and a cell phone.

#29, Ex. 55, at 3-4 (citation footnotes omitted).

Lowe contends that the taking of a vehicle constitutes the taking of property such that the elements of unlawful taking of a vehicle are an entirely included subset of the elements of robbery. The Supreme Court of Nevada, however, is the final arbiter of Nevada state law. The state high court held, in applying the Nevada state law standard governing lesser included offenses, that unlawful taking of a vehicle is not a lesser included offense of robbery because the latter offense does not pertain specifically to vehicles. The state high court's manner of applying Nevada's general standard regarding lesser included offenses to the particular offenses in question is binding on this court.

Moreover, even if, *arguendo*, this court could second-guess the Nevada Supreme Court's application of Nevada state law, the state high court further determined that petitioner could not demonstrate ineffective assistance of counsel because there was overwhelming evidence to support Lowe's robbery conviction. Given the evidence canvassed above on Ground 1, the determination that there was not a reasonable probability that the giving of an instruction on unlawful taking of a vehicle would have changed the jury's verdict was neither contrary to nor an unreasonable application of *Strickland*.

Ground 2(a) therefore does not provide a basis for federal habeas relief.[24]

The court further concludes that a federal evidentiary hearing is not warranted herein under 28 U.S.C. § 2254(e)(2).

////

////

////

---

[24] Ground 2(b) was not exhausted and has been dismissed.

-14-

1      IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be
2 DENIED on the merits and that the petition shall be DISMISSED with prejudice.
3      The clerk of court shall enter final judgment accordingly.
4      DATED: March 31, 2008.

_____
JAMES C. MAHAN
United States District Judge